AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| United States of America | ) |
|---|---|
| v. | ) |
| Rodolfo Castillo<br>COB: USA<br>DOB: 01/15/1970 | ) Case No. 7:25-mj-2518 |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 2, 2025__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S. Code § 554 | Smuggling goods from the United States |
| 18 U.S. Code § 1956 | Laundering of monetary instruments |

This criminal complaint is based on these facts:

See Attachment A.

☑ Continued on the attached sheet.

/S/ Mario Godinez
*Complainant's signature*

Mario Godinez - Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/3/25 @ 7:45 am

City and state: McAllen, Texas

Juan F. Alanis, US Magistrate Judge
*Printed name and title*

## Attachment A

I, Mario A. Godinez, am a Special Agent (SA) of U.S. Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) and have direct personal knowledge of the following facts. The facts related in this attachment do not reflect the totality of information known to me or other agents/officers, merely the amount needed to establish probable cause. I do not rely upon facts not set forth herein in reaching my conclusion that a complaint should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this attachment in support of the complaint.

For the purposes of this report, any confidential informant ("CI") and/or undercover agent ("UCA") mentioned will be referred to in the masculine, regardless of their gender. On August 8, 2025, under the direction of Homeland Security Investigations ("HSI") Special Agents, a CI contacted an individual identified as Rodolfo CASTILLO ("CASTILLO") via a voice call using the WhatsApp messaging application. This conversation was recorded and monitored by HSI Special Agents. During the call, CASTILLO explicitly stated that he avoids reporting merchandise entry into Mexico to evade detection by authorities.

CASTILLO further discussed making payments to various parties, including corrupt Mexican law enforcement officials, to facilitate uninterrupted transport. Specifically, CASTILLO mentioned paying $20,000 pesos to Harfuch's police department, a newly implemented police force in Mexico that is reportedly incorruptible. For reference, in 2025, Omar García Harfuch, serving as Mexico's Secretary of Security and Citizen Protection, established the National Operations Unit (UNO), an elite police force focused on combating organized crime. This unit operates directly under Harfuch's command and is primarily composed of personnel from the former Federal Police. CASTILLO stated that the politician Omar Harfuch, who oversees the police force, is likely unaware of these bribes, and added, "la gente que está en el piso, esos comen de otro plato" ("*The people who are on the floor, they eat from a different plate*"), implying that individuals in lower positions or struggling operate differently and may accept bribes to make ends meet.

During the conversation, CASTILLO admitted to compensating clients 50% of the value of merchandise if it is seized during transport. CASTILLO emphasized that he has not encountered those problems in years and stated that "everyone is getting paid", so there shouldn't be any problems. He further stated that he has not had any problems with law enforcement, saying, "Oye, estoy pagando papi, pues responde por lo que te estoy dando" ("*Hey, I'm paying, man, so answer for what I'm giving you*"). CASTILLO stated that he manages the shipping process and charges $1,800 USD per "line," referring to the space the bales occupy on the trailer. CASTILLO further disclosed that he works alongside his wife, identified as BERTHA Castillo ("BERTHA"), who manages sales while he oversees shipping operations.

On August 26, 2025, HSI Special Agents, utilizing a UCA, engaged in a voice call with BERTHA via WhatsApp. During the call, the UCA discussed arrangements for a cash payment to purchase

used clothing intended for shipment to Mexico. BERTHA indicated that the payment could be made at her warehouse, Oro Ropa Usada, and stated that her husband, CASTILLO, would also be present during the transaction. Later that day, HSI Special Agents conducted an undercover operation at Oro Ropa Usada. At approximately 7:16 PM, Customs and Border Protection ("CBP") Air and Marine Operations ("AMO") agents observed CASTILLO's Black Jeep arrive at the warehouse, where the UCA was already present. At approximately 7:20 PM, the UCA entered Oro Ropa Usada, escorted by CASTILLO and BERTHA. The UCA provided CASTILLO and BERTHA with $20,742.00 in U.S. currency for the purchase and transport of used clothing into Mexico. The UCA explained that his job was to collect money from Houston and transport it south, earning a 1-2% commission on the total amount transported. The UCA observed CASTILLO and BERTHA counting the currency, after which BERTHA placed the money into her black purse. CASTILLO informed the UCA that the used clothing would be shipped to Mexico approximately one week later. The UCA, CASTILLO, and BERTHA exited Oro Ropa Usada, and BERTHA maintained possession of the black purse. At approximately 7:38 PM, AMO agents observed the black Jeep departing Oro Ropa Usada and followed it to CASTILLO's primary residence in McAllen, Texas. At approximately 7:42 PM, agents observed BERTHA exit the passenger side of the Jeep, carrying the black purse containing the $20,742.00, and enter the residence.

On September 2, 2025, HSI Special Agents conducted surveillance at Oro Ropa Usada and observed a black semi-tractor pulling a brown trailer departing the lot. The semi-tractor and trailer were escorted by CASTILLO's black Jeep as they traveled to the Pharr Port of Entry ("POE") in Pharr, Texas. At approximately 8:14 PM, CBP officers interdicted the semi-tractor and trailer as it attempted to exit the U.S. The driver and the tractor trailer were escorted to secondary inspection for further examination. During questioning, the driver, after being advised of his Miranda rights, admitted that he had been transporting trailers containing used clothing for CASTILLO from Oro Ropa Usada for approximately 18 months. The driver stated that the trailer contained used clothing, motor oil, and food, that were provided by CASTILLO and intended for export to Mexico. He stated that the merchandise had an approximate value of $250,000 USD and that he was paid $2,500 pesos to deliver it into Mexico. The driver further admitted that CASTILLO had only provided him with Mexican importation documents, which contained blank fields and lacked a commodity description.

On September 4, 2025, HSI Special Agents conducted a consensual interview with CASTILLO and BERTHA at Oro Ropa Usada. CASTILLO admitted that the detained shipment originated from his warehouse and was intended for his Mexico-based customers. CASTILLO stated that the merchandise had an approximate value of $75,000 USD and that his customers always pay for the merchandise in cash. CASTILLO explained that his customers wire transfer funds to McAllen, where the cash is then delivered to him. CASTILLO additionally stated that the most cash he has ever been given by a customer is $8,500 USD.

Between September 8, 2025, and September 11, 2025, further inspections of the trailer revealed approximately 507 bales of used clothing, 373 five-quart containers of motor oil, and 230 boxes and 302 bags of Indian food. On September 11, 2025, CASTILLO was contacted by HSI Special Agents and informed that the Indian food from his detained trailer could be picked up at the Pharr POE if he wished to retrieve it. CASTILLO agreed and stated that he would bring a trailer along with two helpers to assist with loading the food. While his helpers were loading the items, CASTILLO voluntarily agreed to speak with HSI Special Agents.

When asked about export documentation, CASTILLO admitted that he did not file a Shipper's Export Declaration ("SED") for the shipment. He acknowledged his awareness of SED requirements, including the $2,500 USD filing threshold, and admitted that he had previously completed SEDs with the assistance of a broker. However, CASTILLO claimed that he believed the responsibility for filing documentation rested with his Mexican customers. A review of federal export records revealed that Oro Ropa Usada and CASTILLO had filed 158 SEDs between 2009 and 2021, demonstrating his knowledge of the legal requirements. CASTILLO was asked whether he had ever filed an IRS Form 8300, to which he responded that he had not, stating that he never had the need to do so. When questioned about his familiarity with the form, CASTILLO confirmed that he was aware of Form 8300 and its filing requirements. CASTILLO was then asked if he had ever received more than $10,000 USD in cash from a single transaction or related transactions. CASTILLO claimed that he had never received an amount exceeding the reporting threshold, asserting that his customers always made payments below $10,000 USD, despite having received $20,742 USD just 16 days earlier.